## A01A0016. SEQUOIA RESIDENTIAL ROOFING, INC. v. HANLAKE I, LP.
### (543 SE2d 816)

MIKELL, Judge.

This appeal is from the grant of partial summary judgment to a property owner, Hanlake I, LP ("Hanlake"), in its suit against Sequoia Residential Roofing, Inc. ("Sequoia") alleging negligent performance of a roofing contract. Finding genuine issues of fact remain, we reverse.

When reviewing the grant of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate the absence of a genuine issue of material fact and that the undisputed facts warrant judgment as a matter of law.[1] Further, "[w]hen ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion."[2]

So viewed, the evidence shows that in November 1997, Hanlake hired Sequoia to reshingle the roofs of three commercial buildings Hanlake owns on Northlake Parkway in Tucker. Sequoia's president, Bradley Prestridge, deposed that a problem arose on the first day of work. Prestridge received a call from the site from one of his employees, Steve Silva, who reported that the lightweight concrete decking underneath the shingles of the first roof was "cracked . . . like the Mojave desert." According to Prestridge, Silva recommended nailing down plywood decking over the concrete to support the new shingles. Prestridge deposed that he relayed this recommendation to an employee of Hanlake, Timothy Smithwick, for whom he had previously performed roofing work, and to L. C. "Pete" Watson, Jr., the president of Hanlake's general partner. According to Prestridge, Watson stated that he did not wish to incur the additional expense, and he instructed Prestridge to nail the shingles onto the concrete.

The hammering of the nails broke the concrete, and pieces of it fell into the building. This happened on the second building as well. Prestridge reiterated to Smithwick the need to lay plywood, so that only a small portion of each nail would puncture the concrete. Watson consented, and plywood was applied to the second roof. The third roof did not require plywood because "[i]t had chicken wire underneath to prevent anything from falling through."

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] (Citations omitted.) *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

When the job was completed, Prestridge met with Watson to collect payment. They discussed the "crackings," and Watson asked Prestridge to make repairs. Sequoia removed an unspecified number of shingles, used metal to patch holes, and replaced the shingles. Prestridge averred that he had no further discussions with Watson concerning the roof's condition.

When Sequoia did not receive payment of the balance due for the work, $8,892.23, it filed a materialman's lien against the property.[3] Three months later, Hanlake filed the instant action, alleging that Sequoia breached the contract and breached its duty to complete the work in a skillful manner, requiring Hanlake to remove and replace the existing shingles and decking and relocate tenants in the process. Hanlake sought damages in excess of $191,000, restitution of amounts paid to Sequoia, attorney fees, and punitive damages.

Subsequently, Hanlake moved for partial summary judgment on the issue of Sequoia's liability for breach of contract and for negligent performance of its contract. Hanlake proffered the affidavit of Watson, who averred that the underside of the concrete roof decking was in good condition before Sequoia worked on it; that after Sequoia performed the work, the concrete was extensively damaged; and that he relied on Sequoia's expertise to evaluate and execute the project.

In granting the motion, the trial court apparently agreed with Hanlake that Prestridge's deposition established Sequoia's liability as a matter of law.[4] This is incorrect.

In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury.[5] Although Prestridge speculated during his deposition testimony that the hammering of the nails into the shingles damaged the concrete underneath, the testimony does not establish causation or negligence as a matter of law. In fact, it provides some evidence that Hanlake assumed the risk of the damage by refusing to incur the additional expense of plywood decking, as Sequoia recommended. "[O]n plaintiff's motion for summary judgment, it was [Hanlake's] burden to establish the non-existence of a genuine issue of fact as to each affirmative defense."[6] Accordingly, this Court finds that Hanlake was

---

[3] The lien was filed by Sequoia Roofing Corporation, but Hanlake did not move for summary judgment against this entity.

[4] We do not consider the deposition of Watson, as it does not appear that it was filed with, or considered by, the trial court in its order granting summary judgment. *Ga. Farm &c. Ins. Co. v. Shook*, 215 Ga. App. 66, 67-68 (449 SE2d 658) (1994) ("this court cannot consider evidence not presented to the trial court"). Accordingly, we deny as moot Hanlake's motion to strike all references to Watson's deposition testimony in Sequoia's briefs.

[5] *Traina Enterprises v. RaceTrac Petroleum*, 241 Ga. App. 18 (525 SE2d 712) (1999).

[6] *Abdalla v. DDCB, Inc.*, 216 Ga. App. 667, 668-669 (455 SE2d 598) (1995).

not entitled to summary judgment because it failed to demonstrate the absence of a jury issue as to whether it assumed the risk of damage to its property.

In addition, issues of negligence and causation generally are not appropriate for summary adjudication unless the evidence is plain, palpable, and undisputable.[7] This is not such a case. Sequoia submitted the affidavit of a roofing expert, Kenneth Hopper, who averred that upon inspecting the roofs on the first two buildings, he discovered that three roofs had been placed on top of each other, which violated acceptable building codes. Hopper believed that the three sets of nails used on the three prior roofs caused the concrete decking to crack. Accordingly, even if Hanlake had made the requisite prima facie showing that it was entitled to judgment as a matter of law, Sequoia presented rebuttal evidence showing that genuine issues remain for trial.[8]

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 3, 2001.

*Webb, Carlock, Copeland, Semler & Stair, Douglas W. Smith, Nicholas M. Hollander*, for appellant.

*Smith, Gambrell & Russell, Rex M. Lamb III, Edward D. Burch, Jr., Randolph W. Carter*, for appellee.

---

[7] *Robinson v. Kroger Co.*, 268 Ga. 735, 739-740 (493 SE2d 403) (1997).
[8] See generally *Etheredge v. Kersey*, 236 Ga. App. 243, 244-245 (510 SE2d 544) (1998).